STATE, Plaintiff, vs. SORENSON, Defendant.

*April 5—April 30, 1935.*

For the plaintiff there were briefs by the *Attorney General, A. H. Smith,* acting special assistant attorney general, *Warren H. Resh,* assistant attorney general, and *T. A. Waller,* district attorney of Pierce county, and oral argument by *Mr. Smith* and *Mr. Resh.*

*M. L. Fugina* of Fountain City, for the defendant.

ROSENBERRY, C. J.   Ch. 242, Laws of 1933 (sec. 29.085), provides:

"The conservation commission is hereby authorized to regulate hunting and fishing on and in all interstate boundary waters, except the outlying waters specified in subsection (4)

of section 29.01, and excepting boundary waters between the states of Wisconsin and Iowa, and St. Louis river, St. Louis bay, Superior bay and Allouez bay, in conjunction with the proper authorities of adjoining states, for the purpose of effecting a similarity of laws pertaining to the fish and game of such waters. Any act of the conservation commission in so regulating the hunting and fishing on and in such interstate boundary waters shall be valid, all other provisions of the statutes notwithstanding."

Sec. 23.09 (1) provides:

"The purpose of this section is to provide an adequate and flexible system for the protection, development and use of forests, fish and game, lakes, streams, plant life, flowers and other outdoor resources in the state of Wisconsin."

The commission is created by sub. (2) of sec. 23.09.

Sec. 23.09 (7) provides:

"The commission is hereby authorized to make such rules and regulations, inaugurate such studies, investigations and surveys, and establish such services as they may deem necessary to carry out the provisions and purposes of this act, and any violation of any provisions of this act, or of any rules or regulation promulgated by the commission, shall constitute a misdemeanor and be punished as hereinafter provided."

The powers of the commission were greatly enlarged and the exercise of its power with respect to the conservation of fish and game regulated by ch. 152, Laws of 1933, now sec. 29.174.

It is contended that sec. 29.085 is unconstitutional because it is an unlawful delegation of legislative power to the conservation commission. Counsel argues that it is clearly within the rule in respect to unlawful delegation of legislative power laid down in the recent case of *Panama Refining Co. v. Ryan*, 293 U. S. 388, 55 Sup. Ct. 241. It is contended that the power attempted to be conferred is unrestricted; that no standard is established which limits the power or

authority of the commission; that it does more than authorize the commission to fill up the details or provide for matters of administration.

It is considered that this position is not well taken. In the first place, the section applies to a limited and restricted area, to wit, boundary waters with certain exceptions. Secondly, it confers the power to make rules and regulations in conjunction with the proper authorities of adjoining states. This of itself is a limitation with respect to boundary water. The power of the commission is limited by this act to rules and regulations concurred in by similar authorities from other states, in this case the state of Minnesota. Thirdly, the whole purpose to be achieved by the rules and regulations is declared by sec. 23.09 to be the protection, development, and use of fish and game. Certainly, this declaration contained in the law creating the conservation commission sets up a standard which is to govern the exercise of the powers conferred upon the conservation commission, for they are authorized to make such rules and regulations as carry out the provisions and purposes of the act. Sec. 29.085 is a part of and subject to the limitation contained in chs. 23 and 29, except as specifically provided in sec. 29.085. It is considered that sec. 29.085 is a valid enactment; that it establishes a standard, and that the legislature may delegate such power as is conferred upon the conservation commission by that section.

It is further urged that the section is invalid because it authorizes the conservation commission to repeal an act of the legislature. This contention involves a misconception or wrong interpretation of the section. What section 29.085 provides is that the interstate boundary waters shall be governed by the law then in force until such time as the commission shall act pursuant to the authority conferred upon it, and when it so acts the legislature declares that its rule and

regulation shall become a law. The power delegated is analogous to the power conferred upon this court to modify statutory rules of procedure. See *Rules of Court Case,* 204 Wis. 501, 236 N. W. 717.

It is next urged that the orders, rules, and regulations made by the conservation commission pursuant to the section are arbitrary, unlawful, and unreasonable. The act being valid, question 2 inquires whether or not the orders adopted pursuant thereto are valid. It appears from the stipulated facts that the conservation commission, in conjunction with the proper authorities of the state of Minnesota, agreed upon certain rules and regulations, respecting the taking of fish in the boundary waters which were thereafter promulgated for the state of Wisconsin by the conservation commission and by the state of Minnesota by the proper authorities of that state. The rules adopted at such conference provide for a close season for game and other fish, a bag limit for each day, a minimum length for each variety of fish, regulations with respect to taking of fish by hook and lines, setlines, spears, and nets. By their terms these rules apply literally to the boundary waters, including waters in the state of Minnesota, as well as those within the state of Wisconsin. It is a well-established principle that legislative acts are not effective beyond the territorial boundaries of the state in which they are passed. No doubt the orders were framed as they were with this rule in mind, so that if the water boundary shifts, as it sometimes does, no question could be raised as to the applicability of the rules and regulations in question. We see no valid objection to so framing the rules and regulations adopted. It cannot be assumed that the commission attempted to regulate the taking of fish in the waters of the state of Minnesota. Such an act would be futile.

The rules further require wardens to be in attendance. As amended, these rules require the commercial fishermen

having the benefit of their services to furnish transportation to and from the fishing grounds and pay the board and lodging of the warden. They further provide that no warden will be supplied by the conservation department for a period of time less than six days. There are no facts appearing in the stipulation, nor are there any facts of which the court can take judicial notice, upon which it can be said that these rules and regulations are arbitrary and unreasonable. In waters containing both rough and game fish and varieties of fish which may be taken at different times in different seasons, to allow fish to be taken by nets without supervision would undoubtedly result in inadequate protection to the fish life of the district. Whether or not the six-day requirement is reasonable depends upon how the operations regulated are conducted. It is apparently necessary to fix some reasonable time, because otherwise demands for supervision might be made in such a way as to become a nuisance and an annoyance.

It is urged that small operators cannot afford the expense of supervision, and therefore are in effect prohibited from operating. It does not appear that the defendant is a small operator and entitled to raise the question. *Verhelst Construction Co. v. Galles,* 204 Wis. 96, 235 N. W. 556.

*By the Court.*—It is considered that each of the questions certified to this court should be answered "Yes," and they are so answered.